■ BROOK SHOPPING CENTERS, INC., Respondent-Appellant, v F.W. WOOLWORTH Co., Appellant-Respondent. [628 NYS2d 318] —In an action, *inter alia,* to collect rent payments, the defendant appeals from a judgment of the Supreme Court, Westchester County (Wood, J.), dated July 29, 1992, which, after a nonjury trial, is in favor of the plaintiff and against it in the principal sum of $238,145.79, and the plaintiff cross-appeals on the ground of inadequacy from the same judgment.

Ordered that the judgment is reversed, on the law and the facts, with costs to the defendant, and the complaint is dismissed.

This appeal concerns the amount of rent to be paid by the defendant F.W. Woolworth Co. (hereinafter Woolworth) for the use of certain outdoor space adjacent to two stores it leases

from the plaintiff Brook Shopping Centers, Inc. (hereinafter Brook), located in the Cross County shopping center (hereinafter the center). Woolworth uses the outdoor space on a seasonal basis to sell plants and gardening supplies. The leases for the two stores were originally executed in the 1950's and have been periodically renewed over the years by successive landlords, including Brook. Pursuant to these leases, Woolworth was to pay Brook a base rent plus a percentage of its gross sales above a "break" point for each of the two stores. However, the leases do not expressly encompass Woolworth's use of the outdoor space, although Woolworth has been using the outdoor space with the knowledge of Brook and its predecessors since the mid-1960's (Brook purchased the center in 1977).

Woolworth had been paying rent for its use of the outdoor space based on the "percentage of gross" portion of the rent formula for the main stores (*i.e.,* no base rent was paid for use of the outdoor space). This arrangement continued without incident until May 1987 when there arose a dispute between the parties concerning, *inter alia,* store hours, and Brook began demanding base rent for the outdoor space in addition to the "percentage of gross" rent already being paid. When the parties failed to resolve their differences, Brook commenced this action for a judicial determination as to a fair rent for the outdoor space. After a nonjury trial, the court granted judgment in favor of Brook and awarded it half of the additional rent it was seeking. We now reverse.

Generally, the modification of a written lease is subject to the statute of frauds and, therefore, must be in writing *(see, Rose v Spa Realty Assocs.,* 42 NY2d 338; General Obligations Law § 15-301 [1]). However, an exception to this rule may occur and an oral agreement can become binding if it is supported by partial performance "unequivocally referable" to a modification *(Rose v Spa Realty Assocs., supra,* at 344). Here, Leonard Marx, a principal of Brook and its chief witness at trial, admitted in an EBT, which was read into the record, that he was aware that Woolworth had been using and paying a percentage of gross rent for the outdoor space at issue for 15 to 20 years prior to 1987. He also admitted that, by virtue of Brook's acceptance of rent with such knowledge, Brook had an agreement with Woolworth to accept that rent. Indeed, a renewal of lease notice mailed by Woolworth in 1986 expressly defines the lease as encompassing "all prior modifications". Because Woolworth's payment and Brook's acceptance of a percentage rent for the outdoor space are "unequivocally

referable" to such a modification, the agreement is enforceable against Brook for the remainder of the terms of the leases *(see, Rose v Spa Realty Assocs., supra,* at 344; *Pau v Bellavia,* 145 AD2d 609; *cf., Stepet Card & Gift v Matejka,* 106 AD2d 565). Ritter, J. P., Copertino, Friedmann and Florio, JJ., concur.